UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ARAMTEL, LTD.<br>P.O. Box 4703<br>Dubai, United Arab Emirates | * | |
| | * | |
| Plaintiff | * | |
| v. | * | **WDQ07CV1694** |
| FAISAL FADUL<br>43121 Goose Glen Lane<br>Ashburn, VA 20147 | * | Case No. _____ |
| | * | |
| and | * | |
| DYNACORP, LTD.<br>1 Yonge Street<br>Suite 1801<br>Toronto, Ontario M5E1W7<br>Canada | *<br>*<br>* | |
| and | * | |
| TECKTEL, INC. a/k/a TECKTEL, LTD.<br>121 West 10th Street<br>Suite 303<br>Erie, Pennsylvania 16501 | *<br>* | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT

Plaintiff Aramtel Limited ("Aramtel"), by its undersigned counsel, respectfully files this Complaint against the Defendants, Dr. Faisal Fadul ("Dr. Fadul"), DynaCorp Limited ("DynaCorp"), and Tecktel, Inc. a/k/a Tecktel, Ltd. ("Tecktel") (collectively, Dr. Fadul, DynaCorp and Tecktel will be referred to as "Defendants"), and in support thereof, states:

## *I.   GENERAL ALLEGATIONS*

1.     As a result of the 2003 invasion of the Republic of Iraq by the United States of America, Great Britain and other countries, and the resulting conflict, much of Iraq's infrastructure, most of which was antiquated and unreliable, was seriously damaged or destroyed. This includes the country's limited wireless telecommunications network.

2.     In an effort to participate in the rebuilding and modernization of Iraq's wireless telecommunications network, Aramtel and Defendants entered into an Operating Agreement authorizing the organization of Moutiny, Ltd. ("Moutiny") to act as a holding company to own one hundred percent (100%) of the shares of VitelTel, an Iraq public limited company, to engage in the business of providing wireless local loop ("WLL") and other telecommunication services in Iraq. Fifty percent (50%) of Moutiny was to be owned by DynaCorp, which was solely owned by Dr. Fadul, while the remaining fifty percent (50%) of Moutiny was to be owned by Aramtel. The Operating Agreement further provided that Dr. Fadul and DynaCorp were to contribute their one hundred percent (100%) ownership interest in VitelTel which had entered into a certain WLL O&M Agreement with the Iraqi Telecommunication and Post Company ("ITPC") which provided VitelTel with a license to operate a wireless local loop communication network in certain designated provinces in Iraq. Dr. Fadul further pledged to act as the Managing Member of Moutiny with day-to-day responsibility for the operations of VitelTel, while Aramtel agreed to invest Five Hundred Thousand US Dollars (US $500,000) in Moutiny and loaning it Five Million US Dollars (US $5,000,000) for operating expenses and up to an additional Twenty-Five Million US Dollars (US $25,000,000) to purchase equipment and pay related expenses. The business plan presented to Aramtel by Dr. Fadul called for Moutiny to generate revenue in

excess of One Billion Five Hundred Million US Dollars ($1,500,000,000) over the subsequent five years.

3.     This case arises out of Defendants' multiple breaches of the Operating Agreement, as well as their repeated misrepresentations regarding the status of VitelTel's license and failures to exercise their best efforts on behalf of Moutiny and VitelTel. Defendants have, among other things, failed to properly manage VitelTel's operating accounts, failed to pay employees and contractors, failed to properly implement and maintain the equipment paid for by Aramtel, abandoned the project and business initiatives of VitelTel, and secured a telecommunications license from the ITPC on behalf of an affiliated entity in direct violation of the Operating Agreement's provision prohibiting the Defendants from engaging in any business that competes with the business of VitelTel. As a result of such material breaches of the Operating Agreement and repeated misrepresentations, Aramtel has suffered, and will continue to suffer, significant irreparable harm and monetary damages.

## II.   PARTIES

4.     Aramtel Ltd. is a United Arab Emirates JAFZA offshore company that owns fifty percent (50%) of Moutiny Ltd.

5.     DynaCorp Ltd. is a United Arab Emirates JAFZA offshore company that owns fifty percent (50%) of Moutiny Ltd.

6.     Tecktel Inc. a/k/a Tecktel Ltd. is an Iraqi public limited company with a place of business in Erie, Pennsylvania.

7.     Dr. Fadul, upon information and belief, is a citizen of both Iraq and the United States with significant personal and business interests in both countries.

### III.   JURISDICTION AND VENUE

8.   This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332. The Defendants have further consented to submit to the personal jurisdiction of this Court.

9.   Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

### IV.   GENERAL ALLEGATIONS

**A.   Formation of Moutiny and execution of Moutiny Operating Agreement**

10.   In the wake of the 2003 invasion of Iraq by the United States, Great Britain and other countries, much of Iraq's infrastructure, most of which was antiquated and unreliable, was damaged or destroyed.

11.   In 2005, the ITPC entered into Wireless Local Loop Operations & Management (WLL O&M) agreements with various wireless telecommunication providers whereby these providers were authorized to operate wireless regional networks throughout Iraq. By a certain WLL O&M agreement dated November 27, 2005, VitelTel was provided with a license to install, maintain and operate a wireless telecommunications network in ten Iraqi provinces. At that time, VitelTel was owned by Dr. Fadul and/or DynaCorp.

12.   VitelTel was unable on its own to generate the funds necessary to acquire, install, and maintain the equipment necessary to operate the network. As a result, Defendants, on the one hand, and Aramtel, on the other, entered into negotiations to infuse needed resources into VitelTel, including cash and equipment. These negotiations resulted in the formation of Moutiny Limited and execution of the Moutiny Limited Operating Agreement, a copy of which is attached hereto and incorporated herein as *Exhibit A* (the "Agreement").

13.   Pursuant to the terms of the Agreement, Moutiny is owned evenly by DynaCorp and Aramtel. Dr. Fadul and DynaCorp contributed their ownership interests in VitelTel to

Moutiny while Dr. Fadul pledged to act as Moutiny's Managing Member and be primarily responsible for VitelTel's day-to-day operations. On the other hand, Aramtel agreed to invest Five Hundred Thousand US Dollars (US $500,000) in Moutiny and loan it an additional Five Million US Dollars (US $5,000,000) for operating expenses and up to an additional Twenty-Five Million US Dollars (US $25,000,000) for the purchase of telecommunications equipment and payment of related expenses.

14. The Agreement provides that the purposes for which Moutiny were formed and the business and objects to be carried on and promoted by Moutiny are:

> (i) to own 100% of the ownership interests in VitelTel, which shall be engaged in the business of providing wireless local loop and other telecommunication services in the Republic of Iraq and elsewhere; VitelTel's responsibility shall include, but shall not be limited to, the installation, commissioning, and provisioning of all systems, operations and maintenance of all systems, and sales and marketing of Wireless Local Loop Services;
>
> (ii) to acquire, develop, exploit, sublicense and otherwise deal in licenses, permits, and all manner of rights to provide wireless telecommunication services; and
>
> (iii) to engage in any one or more of businesses or transactions, or to acquire all or any portion of any entity engaged in any one or more businesses or transaction, as determined by a Majority of the Members. . . .

15. Certain provisions of the Agreement are relevant to this matter including:

**Section 3.8.** Loans.

> (ii) Upon the execution of this Agreement and from time to time thereafter (a) Aramtel shall advance to [Moutiny] and/or to VitelTel up to an amount not to exceed $25 Million Dollars to be used exclusively by [Moutiny] and/or VitelTel to fund the purchase of telecommunications equipment from Tecore Wireless Systems MEAFZ-LLC ("TWS") (the proceeds of any such loan shall be paid directly by Aramtel to TWS on behalf of [Moutiny] and/or

>VitelTel (the "Equipment Funds")); and (b) $5 Million Dollars to be used for operating expenses determined in accordance with this Agreement (the "Operating Funds") (the Equipment Funds and Operating Funds are collectively referred to herein as the "Loan"). The Loan shall be sufficient to fund VitelTel for six months to build a telecommunications system sized for 200,000 subscribers based on the business plan developed by VitelTel.

**Section 3.10**. Additional Licenses. From the Effective Date of this Agreement until November 30, 2013, TeckTel, Ltd., an Iraq public limited company, DynaCorp, and Dr. Fadul, and any Affiliate of Dynacorp, Dr. Fadul or TeckTel, Ltd., upon award of any and all other licenses to provide wireless telecommunication services in Iraq shall enter into an exclusive Equipment Purchase Agreement with TWS, for the purchase of equipment deemed commercially suitable if and only if an agreement is reached with TWS to jointly implement the project associated with said license and required funding has been obtained. In the event an agreement is not reached with TWS to jointly implement the project or required funding has not been obtained, then the said license shall be sold or terminated by TeckTel, DynaCorp or Dr. Fadul or any of their Affiliates ....

**Section 4.2**. Management by Managing Member. . . . [T]he Managing Member (Dr. Fadul) shall exercise his best efforts on behalf of [Moutiny] and VitelTel and shall at all times seek to enhance and promote the business interests of [Moutiny] with VitelTel.

**Section 4.3**. Restrictions on Authority. With respect to [Moutiny] and its property, and VitelTel and its property, the Managing Member shall have no authority to perform any act in violation of the [Jabel Ali Free Zone Authority Offshore Companies Regulations 2003] or any other applicable laws or regulations there under, nor shall the Managing Member have any authority, except with the consent of the Majority of Members, to:

(i)   . . . enter into any contract or obligation on behalf of [Moutiny] or VitelTel in excess of $50,000; . . .

(iii)  do any act in contravention of this Agreement; . . .

(vi)  do any act which would make it impossible to carry on the ordinary business of [Moutiny] and/or VitelTel; . . .

(viii) cause [Moutiny] and/or VitelTel to enter into, terminate, modify, amend, sublicense, transfer, or otherwise dispose or deal with the license or any other license pertaining to the business of [Moutiny] and/or the business of VitelTel.

**Section 4.6.** Non-compete Restrictions. The Managing Member, Dr. Fadul, Dynacorp and TeckTel, Ltd., and any Affiliate of the foregoing (i) may not engage in any other wireless telecommunication business activities in the Republic of Iraq that are competitive with the wireless telecommunications business of VitelTel; and (ii) shall have the obligation to present to [Moutiny] and VitelTel any particular business opportunity relating in any manner to the wireless telecommunication business of VitelTel in the Republic of Iraq, even if such opportunity is one which could not be advantageous to [Moutiny] or VitelTel.

**Section 8.6.** Withdraws.

(i) Voluntary Withdrawal. No Member shall have the right or power to voluntarily withdraw from [Moutiny] without the written consent of a Majority of the Members.

**Section 9.1.** Dissolution by Members. [Moutiny] may be dissolved by the unanimous written agreement of the Members.

**Section 10.1.** Books, Records and Accounting. Adequate minute books and accounting records of all [Moutiny] actions and business shall be maintained at the principal office of [Moutiny] and shall be open to inspection by any of the Members and their authorized representatives at all reasonable times upon reasonable notice.

**Section 11.2.** Amendment Requiring Consent of Members. Any amendments to this Agreement, . . . may be made only with the consent of the Majority of the Members.

**Section 14.5.** Governing Law; Venue. Irrespective of the place of execution or performance, this Agreement shall be governed by and construed in accordance with the laws of the State of Maryland, U.S.A., exclusive of any conflicts of laws principles. This Agreement has been executed in the State of Maryland, U.S.A., and the parties hereto hereby agree to resolve any disputes arising hereunder in a court of competent jurisdiction located within the State of Maryland. Each party agrees to submit to the personal jurisdiction of any such court, and further agrees that any

judgment issued by any such court shall be fully enforceable in the courts or other judicial bodies of any other Jurisdiction.

16. Representatives of both Aramtel and DynaCorp executed the Agreement. Moreover, Dr. Fadul, on behalf of TeckTel, Ltd. and in his individual capacity, executed the Agreement for the purpose of being bound to certain provisions; namely, Sections 3.1 (initial capital contributions; representations and warranties), 3.10 (additional licenses), 4.6 (competitive activities), Article IV (management), and Section 8.10 (ownership of DynaCorp).

**B.    The WLL O&M Agreement and Dr. Fadul's Pattern of Deception**

17. As previously set forth, VitelTel entered into a WLL O&M Agreement dated November 27, 2005 whereby VitelTel was provided with a license to install, maintain and operate a telecommunications network in certain provinces of Iraq.

18. In August, 2006, the ITPC terminated all WLL O&M agreements and corresponding licenses, including VitelTel's. Dr. Fadul assured Aramtel on multiple occasions that the license would be reissued; that VitelTel planned on continuing to acquire and install the infrastructure and equipment necessary to operate the network; and that Aramtel should continue to make loan payments to Moutiny. As a result of these representations, Aramtel continued to make loan payments of several million dollars to Moutiny consistent with its obligations under the Agreement.

19. Despite multiple representations during late 2006 and early 2007 that the license would soon be reissued, Dr. Fadul began to change direction in March, 2007. Specifically, he told Aramtel that the license would not be reissued. As detailed below, Aramtel later learned that this representation was not true.

20. On April 12, 2007, the Iraqi Minister of Communications sent a letter to all WLL companies, including VitelTel, outlining a new framework under which all WLL companies

would have to operate. That letter further required the renegotiation of the existing agreement between the ITPC and VitelTel to meet these new terms. Importantly, however, Aramtel understands that Dr. Fadul was assured by the ITPC that the license would be reissued pending execution of a new WLL O&M agreement. Dr. Fadul did not, however, advise Aramtel of this; instead choosing to continue making false representations that the license would not be reissued. In this regard, during a May 9, 2007 conference call with representatives of Aramtel, Dr. Fadul denied receiving the April 12, 2007 letter from the Minister, despite having been provided with a copy of the letter several weeks earlier by VitelTel's counsel. Upon information and belief, Dr. Fadul was negotiating with third parties to operate a wireless telecommunications network in Iraq under the VitelTel license or a separate license in direct competition with VitelTel.

21. Contrary to the continued representations of Dr. Fadul, a high ranking officer of the ITPC, told a representative of Aramtel on May 22, 2007 that the revised agreement was finalized and the corresponding license was issued by the ITPC approximately ten (10) days earlier, but that it was issued to another entity or person at the direction of Dr. Fadul.

C. **Defendants' Multiple Breaches of the Operating Agreement**

22. After execution of the Agreement, Aramtel met each and every obligation required of it by the Agreement including loaning Moutiny Five Million US Dollars (US $5,000,000) for VitelTel's operating expenses, as well as another approximately Twenty-One Million US Dollars (US $21,000,000) to purchase equipment.

23. By contrast, Dr. Fadul, DynaCorp and Tecktel have failed to meet multiple obligations required of them. For example, Dr. Fadul has failed to exercise his best efforts on behalf of Moutiny and VitelTel and has failed to seek at all times to enhance and promote the business interests of Moutiny and VitelTel in contravention of Section 4.2 of the Agreement. In

this regard, Dr. Fadul has, on multiple occasions, announced his intention to abandon Moutiny and VitelTel and their efforts to install and operate a wireless telecommunication network in Iraq, and has ceased active involvement in the management of Moutiny and VitelTel.

24. Dr. Fadul, through counsel, recently sent letters to certain individuals advising Aramtel, including Dr. Ali Attar and Mr. Haider Thamer, threatening legal action and falsely accusing these individuals of inappropriately disclosing certain information to third parties and otherwise defaming Dr. Fadul. These false allegations and meritless threats of litigation were made for the sole purpose of harassing and intimidating Dr. Attar and Mr. Thamer and making them reluctant to provide further advice and counsel to Aramtel.

25. Defendants have also breached Section 3.10 of the Agreement which requires Defendants to enter into an exclusive Equipment Purchase Agreement with TWS for the purchase of equipment upon the award of any other licenses to provide wireless telecommunication services in Iraq, and that if such an Equipment Purchase Agreement is not negotiated, Defendants are to terminate such license. Upon information and belief, the ITPC has issued, or is about to issue, a license to an affiliate of Dr. Fadul, DynaCorp, and/or Tecktel; that such affiliated entity has not attempted to negotiate an Equipment Purchase Agreement with TWS; and the license has not been terminated. It is believed that this affiliated entity intends to install and operate a telecommunications network in Iraq consistent with this license.

26. Defendants' actions also violate Section 4.6 which prohibits Defendants, as well as their affiliates, from engaging in any wireless telecommunication business activities in Iraq in competition with the activities of VitelTel and Moutiny, and further requires them to present to Moutiny and VitelTel any particular business opportunity relating in any manner to the wireless telecommunication business of VitelTel in Iraq. As previously set forth, Aramtel understands

that an affiliate of Dr. Fadul, DynaCorp and/or Tecktel has been issued, or soon will be issued, a license to operate a telecommunications network in Iraq and that this affiliate intends to operate such a network consistent with this license. This opportunity was not presented to Moutiny or VitelTel, and would place such entity in direct competition with the wireless telecommunications business of VitelTel in violation of Section 4.6.

27.     Dr. Fadul has also breached Section 4.3(i) of the Agreement by entering into obligations on behalf of Moutiny and/or VitelTel in excess of $50,000 without the consent of a Majority of the Members as required by the Agreement. Specifically, Dr. Fadul authorized the following expenditures: (i) $145,000 and $738,000 on February 19 and 24, 2007, respectively to an entity known as Al-Masar; and (ii) $131,022 and $200,720 on April 1 and 8, 2007, respectively to an entity known as Omnea. Pursuant to the Agreement, a Majority of the Members means those members owning seventy-five (75%) of the interests of Moutiny. Aramtel owns fifty percent (50%) of the interests of Moutiny and did not consent to any of these expenditures.

28.     Dr. Fadul's actions also constitute a breach of Section 4.3(vi) which prohibits Dr. Fadul from doing any act which would make it impossible to carry on the ordinary business of Moutiny and/or VitelTel. Again, Dr. Fadul, who is tasked with managing Moutiny and VitelTel's day-to-day business activities and is Moutiny's highest ranking representative in Iraq, has abandoned the project and has ceased active involvement in the management of Moutiny and VitalTel. In this regard, Aramtel has learned that VitelTel has forced most of its employees to take unpaid vacations, thus jeopardizing VitelTel's ability to continue in business. These actions have made it impossible for Moutiny and/or VitelTel to continue with their business activities.

29.     Dr. Fadul and DynaCorp have also breached Section 10.1 of the Agreement which requires that adequate minute books and accounting records of all Moutiny actions and business shall be maintained at the principal office of Moutiny and shall be open to inspection by any of the members of Moutiny, including Aramtel, upon reasonable notice. Aramtel has made multiple requests to review the accounting records of Moutiny; most of which have been denied.

30.     All of these improper actions constitute material breaches of the Agreement, and have caused, and will continue to cause, Aramtel to suffer significant financial and other damages. Defendants' actions have greatly jeopardized Aramtel's loan to Moutiny of over Twenty-Six Million US Dollars (US $26,000,000), as well as the expected future revenue and profits to be generated by operating the network.

### *COUNT I – BREACH OF CONTRACT*

31.     Aramtel repeats and realleges the allegations contained in Paragraphs 1 through 30 as if fully set forth herein.

32.     Dr. Fadul, DynaCorp, and Tecktel entered into the Agreement obligating each to engage in certain activities for the advancement of the business interests of Moutiny and VitelTel and prohibiting each of them from engaging in certain activities that would impede those business interests.

33.     Dr. Fadul, DynaCorp, and Tecktel have each breached those obligations through certain omissions and commissions referenced above and otherwise.

34.     Dr. Fadul, DynaCorp, and Tecktel's actions constitute material breaches of the Agreement.

35. Dr. Fadul, DynaCorp, and Tecktel's actions and inactions have caused, and will continue to cause, Ararntel significant financial damage and other harm. For some of these damages, there is no adequate remedy at law.

WHEREFORE, Aramtel respectfully requests that this Honorable Court:

(a)     Issue an order granting a temporary and permanent injunction enjoining and restraining Defendants Dr. Fadul, DynaCorp, Tecktel, or any of their affiliates, from directly or indirectly operating any telecommunications network competing with the business of Moutiny or VitelTel;

(b)     Issue an order granting a temporary and permanent injunction enjoining and restraining Dr. Fadul, DynaCorp, Tecktel, or any of their affiliates, from doing any act which would make it impossible to carry on the business of Moutiny and/or VitelTel;

(c)     Issue an order requiring Dr. Fadul and DynaCorp to disclose the details of any particular opportunity relating to the wireless telecommunication business of VitelTel in Iraq, including, but not limited to, the opportunity presented by the license issued to, or on behalf of, their affiliate as referenced above;

(d)     Issue an order that Dr. Fadul and DynaCorp provide complete accounting records of Moutiny to Aramtel;

(e)     Find that Dr. Fadul, DynaCorp and Tecktel have materially breached the Agreement and order that Dr. Fadul is no longer the Managing Member of Moutiny;

(f)     Award Aramtel monetary damages to compensate it for the material breaches of the Agreement committed by Dr. Fadul, DynaCorp, and Tecktel in an amount not less than the over Twenty-Six Million US Dollars (US $26,000,000) loaned by Aramtel to Moutiny and VitelTel for operating expenses and equipment, plus interest and other costs; and

(g)     Grant such other and additional relief as this Honorable Court deems just and proper under the circumstances.

Respectfully submitted,

/s/ Steven E. Tiller
Steven E. Tiller, Bar No. 11085
Ilana Subar, Bar No. 25181
Whiteford, Taylor & Preston, LLP
Seven Saint Paul Street
Suite 1500
Baltimore, Maryland 21202
(410) 347-8700

*Attorneys for Aramtel, Ltd.*

*1739017*

Respectfully submitted,

/s/ Steven E. Tiller
Steven E. Tiller, Bar No. 11085
Ilana Subar, Bar No. 25181
Whiteford, Taylor & Preston, LLP
Seven Saint Paul Street
Suite 1500
Baltimore, Maryland 21202
(410) 347-8700

*Attorneys for Aramtel, Ltd.*

*1739017*